IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **IN RE: Grace Progressive Missionary Baptist Church, Inc.** | **Chapter 11**<br>**Case No. 8:12-bk-05123-KRM** |
|    **Debtor(s).**               / | |

## DISCLOSURE STATEMENT

Grace Progressive Missionary Baptist Church, Inc., the above-captioned Debtor and Debtor-in-Possession, hereby files and proposes its Disclosure Statement in the form and content set forth herein.

MELODY D. GENSON, ATTORNEY AT LAW
2750 Ringling Blvd., Suite 3
Sarasota, Florida 34237
Telephone: (941) 365-5870
Facsimile: (941) 365-5872
Attorney for Debtor

TABLE OF CONTENTS

|      |                                                                 | Page |
|------|-----------------------------------------------------------------|------|
| I.   | INTRODUCTION...................................................................... | 2 |
|      | A. Purpose of Disclosure Statement................................ | 2 |
|      | B. Source of Information................................................. | 2 |
|      | C. Manner of Voting on the Plan..................................... | 2 |
|      | D. Hearing on Confirmation of the Plan......................... | 3 |
|      | E. Acceptances Required to Confirm the Plan............... | 3 |
| II.  | EVENTS LEADING TO FILING OF CHAPTER 11 PETITION..................... | 3 |
|      | A. Background................................................................... | 3 |
|      | B. Commencement of Chapter 11 Case............................ | 4 |
|      | C. Pending Litigation....................................................... | 4 |
| III. | SUMMARY OF PLAN OF REORGANIZATION........................................ | 4 |
| IV.  | EXECUTORY CONTRACTS............................................................. | 7 |
| V.   | ANTICIPATED MEANS OF EXECUTION OF PLAN................................ | 8 |
|      | A. Funding......................................................................... | 8 |
|      | B. Pre-Petition and Current Revenues............................. | 8 |
|      | C. Historical Data and Future Projections....................... | 8 |
| VI.  | LIQUIDATION ANALYSIS............................................................... | 8 |
| VII. | RISK FACTORS........................................................................... | 9 |
| VIII.| CRAMDOWN............................................................................... | 9 |
| IX.  | MODIFICATION OF PLAN.............................................................. | 10 |
| X.   | FINAL DECREE............................................................................ | 10 |
| XI.  | CONTINGENCIES......................................................................... | 10 |
| XII. | PROFESSIONAL PERSONS............................................................. | 10 |
| XIII.| CONCLUSION.............................................................................. | 11 |

Treatment of Classes and Expenses                REFERENCE EXHIBIT "A"
Pre-Petition and Current Revenues and Expenses  REFERENCE EXHIBIT "B"
Projected Revenues and Expenses                 REFERENCE EXHIBIT "C"

## I.   INTRODUCTION

### A.   Purpose of Disclosure Statement:

Grace Progressive Missionary Baptist Church, Inc. the above-captioned debtor and debtor-in-possession (the "Debtor"), provides this Disclosure Statement (the "Disclosure Statement") to all of the known creditors and parties in interest in order to disclose that information deemed by the Debtor to be necessary to arrive at a reasonably informed decision in exercising a right to vote for acceptance or rejection of its Plan of Reorganization dated June 25, 2012 (the Plan). This Disclosure Statement is intended to enable the Debtor's creditors to make an informed decision in voting to accept or reject the Plan. For the reasons set forth more fully herein, the Debtor hereby recommends and solicits acceptance of their proposed Plan by all persons entitled to vote on the Plan.

### B.   Source of Information:

The source of the information contained within the Disclosure Statement is derived from the Debtor's books and records, historical data, and financial projections prepared by the Debtor.

**The information contained herein has not been subject to a certified audit. The records kept by the Debtor are dependent upon accounting performed by the Debtor. Because a current audit does not exist, the Debtor is unable to warrant or represent that the information contained herein is without any inaccuracies or omissions, although great effort has been made to be accurate.**

**No representations concerning the Debtor is authorized by the Debtor other than those set forth in this statement. Any representations or inducements made to secure your acceptance, which are other than as contained in this statement, should not be relied upon by you in arriving at your decision. Such additional representations and inducements should be reported to counsel for the Debtor who, in turn, shall deliver such information to the Bankruptcy Court.**

### C.   Manner of Voting on the Plan:

All creditors entitled to vote on the Plan may cast their vote for or against the Plan by COMPLETING, SIGNING, DATING, AND MAILING THE BALLOT accompanying this Disclosure Statement TO THE UNITED STATES BANKRUPTCY COURT AT THE SAM M. GIBBONS UNITED

STATES COURTHOUSE, 801 N. FLORIDA AVENUE, STE. 555, TAMPA, FL 33602-3899, ON OR BEFORE THE TIME STATED THEREON.

A copy of the ballot should be mailed to debtors' counsel Melody D. Genson, Attorney At Law, at: 2750 Ringling Boulevard, Suite 3, Sarasota, FL 34237.

D.   Hearing on Confirmation of the Plan:

The United States Bankruptcy Court, Tampa, Florida, shall schedule the hearing on the confirmation of the Plan by separate order. Each party-in-interest will receive, either with this Disclosure Statement or under separate cover, the Bankruptcy Court's notice of hearing on confirmation of the Plan. Attendance is not mandatory, but creditors are invited to attend the Confirmation Hearing on the Plan and voice their opinion for or against objections, if any, filed with regard to confirmation of the Plan.

E.   Acceptances Required to Confirm Plan:

As a creditor, your acceptance is important. In order for the Plan to be deemed accepted, the ballots must be tabulated. Of the ballots cast, more than one-half (½) in number of votes must be for the Plan. In addition, of the ballots cast, the favorable majority must also represent two-thirds (2/3rds) of the dollar amounts of all votes cast.

Further, unless there is unanimous acceptance of the Plan by a class that is deemed impaired under the Plan, the Bankruptcy Court must also determine that, under the Plan, members of such class will receive, as of the effective date of the Plan, property of a value that is not less than the amount that such class of creditors would receive or retain should the Debtor liquidate under Chapter 7 of the Bankruptcy Code on the effective date of the Plan.

## II.   EVENTS LEADING TO FILING OF CHAPTER 11 PETITION

A.   Background:

The Debtor operates its business in Bradenton, Florida and was organized in 1998. The Debtor is a Christian ministry that serves its members and its community with biblical teachings and support through programs and fellowship. The Debtor's congregation, as a whole, owns the Debtor. The Debtor's scope of operation entails worship services, biblical teaching sessions and member ministry programs. The Chapter 11 Bankruptcy for the Debtor was needed for the following reasons:

      a. Pending lawsuit and aggressive collection efforts concerning the Debtor's secured debt, including, foreclosure on the real property, on which the Debtor operates.

      b. The Debtor's income has been sufficient to cover its basic operational costs; however, it has been insufficient to pay the costs associated with the use of the real property on which the Debtor operates its ministry.

The Debtor determined that its business could not generate sufficient revenue to pay its obligations for all of the secured, and unsecured debt accumulated.

This Chapter 11 Bankruptcy was filed on April 3, 2012. The Debtor expects to collect sufficient revenues in order to fund the Plan of Reorganization.

    B.    <u>Commencement of Chapter 11 Case</u>:

On April 3, 2012, the Debtor, Grace Progressive Missionary Baptist Church, Inc., filed a voluntary petition for relief under Chapter 11 of the U. S. Bankruptcy Code with the U. S. Bankruptcy Court for the Middle District of Florida, Tampa Division. This case was assigned Case Number, 8:12-bk-05123-KRM and was assigned to the Honorable K. Rodney May.

Upon the commencement of the Chapter 11 case, the Debtor became "Debtor-in-Possession" and have continued in possession of its assets and to operate its business.

    C.    <u>Pending Litigation</u>:

Prior to the filing of the Chapter 11 Bankruptcy, the Debtor was involved in the following legal actions:

      1.    Evangelical Christian Credit Union, Plaintiff, vs. Grace Progressive Missionary Baptist Church, et al, Defendant, Case No. 2012-CA-001307. This is a foreclosure proceeding filed against the Debtor's business real property 1107 6th St. West, Bradenton, Florida

**III.    SUMMARY OF PLAN OF REORGANIZATION** (Consult Plan for full details.)

    A. <u>In General</u>

The Plan provides for, among other things, the classification and treatment of claims against the Debtor, the funding mechanism for the Plan, provisions governing distribution under the Plan, provisions for the treatment of executory contracts and unexpired leases, provisions for the treatment of disputed

4

claims, conditions to, and effects of, Plan confirmation, and provisions regarding the Bankruptcy Court's jurisdiction after the Effective Date.

B. Property to be Distributed

The collateral of secured creditors will be retained, surrendered or transferred pursuant to the terms and conditions of distribution more thoroughly described herein. Cash will be distributed under the Plan to holders of allowed priority and general unsecured claims. The cash will be distributed in payments over the life of the Plan. The cash will emanate primarily from the revenues collected by the Debtor.

C. Classifications and Treatment of Claims and Interests

1. Unclassified Claims:

a. Administrative Claims Administrative claims are unimpaired under the Plan. The Debtors shall pay the allowed claim of the following administrative claims as set forth below:

1. Any administrative expense, allowed pursuant to Section 503 of the Bankruptcy Code, upon appropriate application and as granted by the Court, the Debtor shall pay in full and in cash within thirty (30) days of the effective date of the Plan or as otherwise agreed between the claimant and the Debtor.

2. The Debtor paid counsel of record, Melody D. Genson, a retainer fee of $9,000.00. Additional fees as approved by the Court, shall be paid within Thirty (30) days of the effective date of the Plan or as otherwise agreed between counsel and the Debtor. Any additional fees and costs will be requested from the court. If this Plan is confirmed, counsel will waive any additional fees over the retainer amount.

b. Priority Tax Claims No priority claims have been filed or are expected to be filed. If filed and allowed, each holder of an Allowed Priority Tax Claim shall be paid by the Debtors by deferred equal monthly cash payments, in full, over the life of the plan, not to exceed five (5) years from the date of the bankruptcy petition. No interest shall be paid unless ordered by this Court or agreed upon by bother the Holder of the Allowed Priority Tax Claim and the Debtor.

c. Classified Claims and Interests: The following is a breakdown of the classes of claims and interests:

    CLASS I    Secured – Evangelical Christian Credit Union

5

(Claim No. 1 / Note and Mortgage on Real Property at 1107 6th St. West, Bradenton, FL)

CLASS II    General, Unsecured Creditors

CLASS III   Equity Holders

d. <u>United States Trustee's Fees:</u>  All fees required to be paid by 28 U.S.C. §1930(a)(6), United Statues Trustee's Fees, will accrue and be timely paid until the case is closed, dismissed or converted to another chapter of the Bankruptcy Code. Any United States Trustee Fees owed, on or before the effective date of this Plan, will be paid on the effective date.

## TREATMENT OF CLASSES AND CLAIM DETERMINATION UNDER THE PLAN

A.    <u>TREATMENT OF CLASSES</u>

**CLASS I.**    <u>Secured – Evangelical Christian Credit Union (Unimpaired)</u>:  Evangelical Christian Credit Union has filed a secured claim in the amount of $470,000.00. The claimant has a mortgage as to the Debtor's real property and church building.

This secured claim of $470,000.00 will be paid in full at the contractual interest rate of 8.625%, as follows:

1. The Debtor will pay an interest only amount, which shall be a monthly payment of $3,331.85, for sixty (60) months.

2. Payments shall begin the first month after the effective date of the Plan, and shall be due the first of the month with the contractual grace period.

3. That thirty (30) days from the sixtieth (60) interest only payment, the Debtor shall pay the balance of the secured claim in full.

4. The claimant shall retain its lien and mortgage and all other terms of the mortgage, not modified herein shall remain in effect.

5. Upon payment, in full, of this $470,000.00 secured claim, the claimant shall release its mortgage.

**CLASS II.** <u>General, Unsecured Creditors</u>:  The Debtor shall issue to unsecured creditors promissory notes in the amount of fifteen percent (15%) of their allowed claims.

The unsecured creditors will be paid as follows:

a) The Debtor shall provide to each unsecured creditor, with allowed claims, a promissory note that shall have a term of seventy-two (72) months, with payments commencing on the thirteen (13) month of the term and paid in sixty (60) equal installments. The amount to be paid under the Note shall be fifteen percent (15%) of the amount of the creditor's allowed claim.

b)   The Notes shall bear no interest.

c)   The Notes shall be paid in equal monthly installments over sixty (60) months, with payments beginning on the thirteenth (13) month after distribution of the Notes.

d)   Promissory Notes will be distributed within thirty (30) days of confirmation to those creditors holding allowed claims at the time of confirmation. Creditors holding disputed claims at the time of confirmation, if said claim is allowed after confirmation, will be issued a Promissory Note within thirty (30) days of the claim being allowed. Said promissory notes will also have a term of seventy-two (72) months.

**CLASS III.**   Equity Interest Holders: Equity Interest Holders consist of the Equity Interest in the Debtor, which is held by the members of the congregation, as a whole. At this time, there is no equity in the shares of the Debtor. The Equity Interest Holders shall continue to operate the church.

The Equity Interest Holders have contributed and will continue to contribute substantial new value to the Debtor as follows:

1.   The Congregation will continue to contribute their offerings to the church on a weekly basis. Said offerings are the majority of the Debtor's revenues.

2.   The Congregation will continue to donate their time to the operation of the church and its ministry.

**IV.   EXECUTORY CONTRACTS**

All executory contracts pending at the time of the filing of the Bankruptcy are rejected unless specifically assumed by the Debtor.

The Plan lists any executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy or assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**(The Deadline for filing a Proof of Claim based on a Claim arising from the Rejection of a Lease or Contract is thirty (30) days of the effective date of the Order Confirming Plan.** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.)

V.   ANTICIPATED MEANS OF EXECUTION OF PLAN

In order to determine a means of funding the Plan, the Debtor has considered its income from the operation of its business, and the amount necessary to fund the Plan. The following is an analysis of these categories and the expected funding:

A.   Funding:

The Debtor will fund the Plan through the Debtor's business operations. The Debtor fully expects to be able to fund the Plan from operations.

B.   Pre-Petition and Current Revenues and Expenses:

The expected total amount needed to fund the Plan is $3,520.99. See Exhibit "A" attached hereto for a breakdown of said amounts.

C.   Historical Data and Future Projections:

The Debtors' pre-petition income and expenses are shown by the Pre-Petition and Current Revenues and Expenses Sheet attached hereto as Exhibit "B". The Debtor's projections are shown by the Projected Revenues and Expenses Sheet attached hereto as Exhibit "C" on the Debtor's pro forma. This pro forma demonstrates that the Debtor has the ability to meet the payments under the Plan. The Debtor has filed monthly operating reports with the Court. These can be reviewed also.

VI.   LIQUIDATION ANALYSIS

Section 1129 (a) (7) of the Bankruptcy Code requires that the Bankruptcy Court find that each holder of a Claim or Interest in each impaired class recover under a Chapter 11 Plan, on

8

account of that Claim or Interest, a value at least equal to the value of the distribution that such holder would receive if the Debtor's assets were liquidated under a Chapter 7 bankruptcy.

In order to estimate the sum, which would be available for distribution to general unsecured creditors of this Debtor, the Debtor has taken into account the negative effects of a Chapter 7 liquidation on hard assets. The Debtor has also considered the additional cost involved in a Chapter 7 case including administrative fees for the Trustee and her retained professionals

The Debtor's estimate of distribution in a Chapter 7 bankruptcy is as follows:

| | |
|---|---|
| Estimated total value of hard assets per Schedules | $ 12,100.00 |
| 2000 Ford Econoline Cargo Van | $ 2,255.00 |
| Petty Cash | $ 56.00 |
| Checking Accounts (Estimated Amount at Confirmation) | $ 1,000.00 |
| Total: | **$ 15,411.00** |
| Reduction for estimated Chapter 11 and 7 Administration Fees | - $ 10,000.00 |
| Estimated Liquidation distribution to unsecured creditors | $ 5,411.00 |

Although liquidation under a Chapter 7 bankruptcy is always uncertain, the norm is that the reduction of asset value is substantial and the Debtor believes these estimated figures are correct.

Under this analysis, the Debtor's Plan pays substantially more to the creditors and meets the Best Interest of Creditors Test.

### VII. RISK FACTORS

As in most Chapter 11 reorganizations, there is a risk that the Debtor will not be able to make payments as proposed under the Plan; however, the Debtor believes that the Debtor's monthly revenues will generate sufficient funds to pay all creditors as provided herein.

### VIII. CRAMDOWN

In the event that any class of creditors is deemed impaired by this Plan of Reorganization and the requisite majorities of Class or Classes fail to approve this Plan of Reorganization, the Debtor intends to confirm its Plan of Reorganization over the objections of any such dissenting class, by use of the provisions of the Bankruptcy Code, Section 1129, and any other provisions relating to cramdown of dissenting classes.

### IX. MODIFICATION OF PLAN

The Debtor may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States Trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

### X. FINAL DECREE

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such final decree on its own motion.

### XI. CONTINGENCIES

There are no contingencies to the confirmation of the Plan other than the Court entering the Confirmation Order confirming the Plan.

### XII. PROFESSIONALS REPRESENTING DEBTORS

During the course of the Chapter 11 case, the Debtor has hired Melody D. Genson Attorney at Law, to serve as its attorney. The Debtor paid a $9,000.00 retainer fee. Fees are charged at a rate of $340.00 per hour plus costs. Any additional fees and costs will be requested from the court. If this Plan is confirmed, counsel will waive any additional fees over the retainer amount.

The Debtor hopes the creditors will vote for the Plan.

All additional attorney's fees and costs are subject to court approval upon appropriate application for same.

## XI. CONCLUSION

Based upon a comparison of the available alternatives, including forced liquidation of the Debtor's assets, and the disclosures contained herein, it is the judgment of the Debtor that the Plan offers all classes of creditors a greater return than would be otherwise possible.

**Accordingly, the Debtor respectfully requests support for the Plan which the Debtor believes will pay the creditors significantly more than such creditors would obtain in a Chapter 7 liquidation case or if the case were dismissed.**

**The Debtor urges each creditor to support the Plan by returning their ballots accepting the Plan.**

DATED: June 21st, 2012.

Grace Progressive Missionary Baptist Church, Inc.
By: Bernis Boykins
Title: President

Melody D. Genson, Attorney at Law
2750 Ringling Boulevard, Suite 3
Sarasota, Florida 34237
Telephone: (941) 365-5870
Facsimile: (941) 365-5872
Florida Bar No. 342092
Attorney for Debtor

11

## TREATMENT OF CLASSES AND EXPENSES UNDER PLAN
### Grace Progressive Missionary Baptist Church, Inc.

| Type or Class | Estimated Amount Due/ Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| Professional Fees Attorney For Debtor (As Approved by Court) | Additional Fees waived if Plan Confirmed | No | No | Paid by retainer Pre-Petition |
| Office of the United States Trustee | Unknown | No | No | Paid in full on effective date |
| Priority Claims | None | No | No | N/A |
| Class I | Secured Claim of ECCU For $470,000.00 | No | No | Monthly interest only payment of $3,331.85 + $470,000.00 balloon |
| Class II | General, Unsecured $75,654.21 | No | Yes | 15% of claim term of 72 months In 60 equal installments beginning the 13 months of the Plan. $189.14 per month |
| Class III | Equity Holders / Congregation | Yes | Yes | Retain ownership and continue to make contributions to the Debtor |

**Total Monthly Amount Needed to Fund the Plan:**
Secured Claim of ECCU:      $3,331.85
General, Unsecured Claims:   $ 189.14
                             $3,520.99

Exhibit "A"

**PRE-PETITION AND CURRENT REVENUES AND EXPENSES**
**Grace Progressive Missionary Baptist Church, Inc.**

I. Pre-Petition Revenues:

    A. 2010: $104,121.00

    B. 2011: $94,411.00

II. Current Revenues:

    A. 2012 (First Quarter): $23,460.79

    B. 2012 Post Petition Month of April: $8,331.35

    C. 2012 Post Petition Month of May: $6,035.61

    D. 2012 Year to Date Monthly Average: $7,565.33

III. Expenses:

    A. 2011 Average Monthly Normal Operating Expenses: $4,479.50
    (Without legal fees or mortgage payments)

IV. Current Expenses:

    A. 2012 Post Petition (April) Normal Operating Expenses: $3,209.15

    B. 2012 Post Petition (April) Normal Operating Expenses: $3,618.77

    C. 2012 Year to Date Average Monthly Normal Operating Expenses: $3,835.16

Exhibit "B"

## PROJECTED REVENUES AND EXPENSES
### Grace Progressive Missionary Baptist Church, Inc.

I. **Projected Revenues:**

    A. Based upon the 2010 revenues of $104,121.00, the 2011 revenues of $94,411.00 and the 2012 year to date monthly average revenues of $7,565.33, the Debtor projects that its revenues, for the life of the 72 months plan, will be approximately $96,000.00 for 2012, but increasing slightly each year back to the 2010 amount.

    B. The estimated monthly revenues available, in the first year of the Plan, will be between $7,600.00 and $8,100.00 per month. Thereafter, the revenue should increase each year to an estimated average of $8,600.00.

II. **Projected Operating Expenses:**

    A. Based upon the 2011 average normal monthly operating expenses of $4,479.50 and the 2012 year to date average normal monthly operating expenses of $3,835.16, the Debtor projects that its expenses for the life of the 72 month Plan will be approximately $3,900.00 per month for 2012, but increasing slightly each year. The current lower expenses are based upon the Debtor's efforts to lower expenses during reorganization.

III. **Funding the Plan:**

    A. Projected Net Profit:

| | | |
|---|---|---|
| i. | Minimum Projected Monthly Revenues: | $7,600.00 |
| ii. | Minimum Projected Monthly Expenses: | $3,900.00 |
| iii. | Net Profit: | $3,700.00 |

    B. Plan Treatment:

| | | |
|---|---|---|
| i. | Secured Creditor Payment (ECCU): | $3,331.85 |
| ii. | Unsecured Payment: | $ 189.14 |
| iii. | Administrative Expenses: (Any amount over the retainer waived if Plan confirmed.) | N/A |
| iv. | United States Trustee Fees: | Minimal |
| | Total Monthly Plan Payments: | **$3,520.99** |

    C. The Debtor has a sufficient amount to fund the Plan even using the lowest projected revenues, with any increased revenues in later years of the Plan to fund any additional expenses that may arise concerning the Debtor.

Exhibit "C"